IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

|  |  |  |
|---|---|---|
| ABDIKAFI SALEH SIYAD, | : | Case No. 1:26-cv-187 |
|  | : |  |
| Petitioner, | : | Judge Matthew W. McFarland |
|  | : |  |
| v. | : |  |
|  | : |  |
| KRISTI NOEM, et al., | : |  |
|  | : |  |
| Respondents. | : |  |
|  | : |  |

## ORDER AND OPINION

This matter is before the Court on Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. 1) and Petitioner's Ex Parte Motion for Temporary Restraining Order and Order to Show Cause (Doc. 2). Respondent Richard Jones, Butler County Sheriff, filed a Motion to Dismiss (Doc. 5), to which Petitioner filed no response in opposition. Federal Respondents filed a Return of Writ (Doc. 10), to which Petitioner filed a Reply in Support (Doc. 11). This matter is therefore ripe for the Court's review.

For the reasons explained below, Counts 1 and 2 of the Petition (Doc. 1) are **DISMISSED WITH PREJUDICE**, Counts 3, 4, 5, 6, 7, 8, and 9 of the Petition (Doc. 1) are **DISMISSED WITHOUT PREJUDICE**, Respondent Richard Jones's Motion to Dismiss (Doc. 5) is **DENIED AS MOOT**, and Petitioner's Motion for Temporary Restraining Order and Order to Show Cause (Doc. 2) is **DENIED AS MOOT**.

## FACTS AS ALLEGED

Petitioner Abdikafi Saleh Siyad, a native and citizen of Somalia, entered the United States through Tecate, California on or about April 3, 2024. (Petition, Doc. 1, ¶ 13; Notice to Appear, Doc. 1-2, Pg. ID 25.) At or around that time, Petitioner was apprehended by Customs and Border Protection agents and taken into custody. (*Id.* at Pg. ID 5; Notice to Appear, Doc. 1-2, Pg. ID 25.) Petitioner was subsequently granted release on his own recognizance ("ROR"). (*Id.* at Pg. ID 5–6; DHS ROR, Doc. 1-2, Pg. ID 24.) And, on or about September 27, 2024, Petitioner submitted an I-589 Application for Asylum and Withholding of Removal to the Executive Office for Immigration Review. (*Id.* at ¶ 14; Asylum Application, Doc. 10-2, Pg. ID 127–42.)

Petitioner was apprehended by agents with U.S. Immigration and Customs Enforcement ("ICE") on December 17, 2025. (Petition, Doc. 1, ¶ 16; ENFORCE Alien Removal Module, Doc. 1-2, Pg. ID 36–39.) The ICE agents placed Petitioner under arrest, and his ROR was revoked. (Petition, Doc. 1, ¶ 16; ENFORCE Alien Removal Module, Doc. 1-2, Pg. ID 37.) Petitioner is detained at the Butler County Correctional Complex, where he has remained since his arrest. (Petition, Doc. 1, ¶ 16; ENFORCE Alien Removal Module, Doc. 1-2, Pg. ID 39.) Federal Respondents inform that Petitioner has not requested a bond hearing from the Immigration Judge and thus has not appealed any bond denial to the Board of Immigration Appeals ("BIA"). (Return of Writ, Doc. 10, Pg. ID 105.) Federal Respondents also inform that Petitioner's I-589 Application for Asylum and Withholding of Removal was denied at a hearing before an Immigration Judge on February 26, 2026, and Petitioner was ordered removed from the United States. (*Id.* at Pg.

2

ID 101–02; 3/4/2026 Immigration Judge Order, Doc. 10-4, Pg. ID 151–54.) However, Federal Respondents note that, because Petitioner reserved appeal, his removal order is not yet administratively final. (*Id.* at Pg. ID 102; 3/4/2026 Immigration Judge Order, Doc. 10-4, Pg. ID 154.)

## PROCEDURAL POSTURE

On February 22, 2026, Petitioner filed a Verified Petition for Writ of Habeas Corpus (Doc. 1). Specifically, Petitioner claims that his ongoing detention violates the Fourth Amendment, the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the *Accardi* doctrine. (*Id.* at ¶¶ 5, 28–97.) This action is brought against the following Respondents in their official capacities: Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Pam Bondi, Attorney General of the United States; Marcos Charles, Acting Executive Associate Director for Enforcement and Removal Operations, ICE; Kevin Raycraft, Detroit Field Office Director, ICE; Todd Lyons, Acting Director of ICE; and Richard Jones, Sheriff of Butler County, Ohio. (*Id.* at Pg. ID 1.) The Court clarifies that, while Petitioner originally brought claims against Kristi Noem and Pam Bondi, Markwayne Mullin is now the Secretary of DHS, and Todd Blanche is now the Acting Attorney General of the United States. *See* Fed. R. Civ. P. 25(d).

On the same day he filed his Petition, Petitioner filed an Ex Parte Motion for Temporary Restraining Order and Order to Show Cause (Doc. 2) requesting that this Court order Respondents to release Petitioner from custody and enjoin Respondents from transferring Petitioner outside the Southern District of Ohio pending these proceedings.

3

(Motion for Temporary Restraining Order, Doc. 2, Pg. ID 42.) Petitioner did not request an informal preliminary conference regarding the Motion for Temporary Restraining Order. *See* S.D. Ohio Civ. R. 65.1(a). Respondent Richard Jones, Butler County Sheriff, filed a Motion to Dismiss for Failure to State a Claim (Doc. 5) on October 29, 2025, to which Petitioner filed no response. And, on March 20, 2026, Federal Respondents filed a Return of Writ (Doc. 10), to which Petitioner filed a Reply in Support (Doc. 11) on March 30, 2026. Accordingly, this matter is ripe for the Court's review.

## LAW & ANALYSIS

The fundamental question of subject matter jurisdiction must precede any analysis of the merits in this case. As federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute," they "have an independent obligation to determine whether subject-matter jurisdiction exists." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Petitioner asserts that this Court possesses jurisdiction to hear this matter because it involves: (1) habeas review (28 U.S.C. § 2241), (2) federal question jurisdiction (28 U.S.C. § 1331), (3) the Suspension Clause (U.S. Const. art. I, § 9, cl. 2), and (4) the APA (5 U.S.C. § 701). (Petition, Doc. 1, ¶ 8.)

To begin, in enacting 8 U.S.C. § 1252(g) through the REAL ID Act, Congress limited the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

4

commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "In the REAL ID Act, Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id*. Similarly, given § 1252(g)'s language as to commencing proceedings and adjudicating cases, this jurisdictional bar also extends to situations in which a petitioner is notified that he or she must "voluntarily depart or face deportation." *Ene v. Phillips*, 99 F. App'x 642, 643 (6th Cir. 2004).

The plain language of 8 U.S.C. § 1252(g) therefore limits jurisdiction as it relates to claims arising from the commencement of removal proceedings, adjudication of such cases, or the execution of removal orders—even when jurisdiction would otherwise be proper under federal question jurisdiction, mandamus jurisdiction, or "any other provision of law." *See Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010); *see also Karki, et al. v. Jones, et al.*, No. 25-CV-281, 2025 WL 1638070, at *7 (S.D. Ohio June 9, 2025). By its terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which would typically provide jurisdiction over cases where an alien is held in custody in violation of the Constitution or the laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). That said, certain applications of § 1252(g) may potentially cause tension with the Suspension Clause. As the Framers enshrined in the Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion

5

or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In order to successfully contest the constitutionality of this statute on Suspension Clause grounds, two things must be true: (1) the petitioner must be seeking "core" habeas relief; and (2) there is no adequate substitute to effectively test petitioner's detention. *Hamama v. Adducci*, 912 F.3d 869, 875–76 (6th Cir. 2018).

In approaching this jurisdictional question, the Court notes that Petitioner's claims do not seek relief from removal. (*See* Petition, Doc. 1, ¶ 10.) At bottom, his claims solely challenge his detention, which he claims violates his Fourth and Fifth Amendment rights, the INA, the APA, and the *Accardi* doctrine. (*Id.* at ¶¶ 5, 28–97.) The Court finds that these claims sound in core habeas relief and do not fall within the scope of § 1252(g). In *Hamama*, the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." *Hamama*, 912 F.3d at 877; *see also Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Zadvydas v. Davis*, 533 U.S. 678 (2001). Indeed, "[f]or over 100 years, habeas corpus has been recognized as the vehicle through which noncitizens may challenge the fact of their detention." *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (citing *Chin Yow v. U.S.*, 208 U.S. 8, 13 (1908)). Here, Petitioner argues that the revocation of his ROR and his detention without a bond determination or opportunity for notice and comment, after what he characterizes as an illegal search and seizure, is unlawful. In other words, he challenges the fact of his detention, independent from his removal. Accordingly, § 1252(g) does not inhibit this Court from reviewing such detention-based claims. *See, e.g., Zhen v.*

6

*Doe*, No. 3:25-CV-1507, 2025 WL 2258586, at *2–4 (N.D. Ohio Aug. 7, 2025); *Resendiz v. Noem*, No. 4:25-CV-159, 2025 WL 3527284, at *2 (W.D. Ky. Dec. 9, 2025).

Having determined that subject matter jurisdiction exists, the Court will now proceed to the merits of the Petition. 28 U.S.C. § 2243 requires a court to issue a writ or order the respondent to show cause as to why a writ should not issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. The statute also "requires an initial screening of a petition" in which "a court accepts as true the allegations in the petition and construes them in favor of the petitioner." *Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-2107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025) (citing *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011)). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," then the court must dismiss the petition. Rule 4, Rules Governing Section 2254 Cases (applicable to petitions arising under § 2241).

## I.      Merits of Counts 1–2 (Fourth Amendment Claims)

Counts One and Two of the Petition include claims that Petitioner is detained in violation of the Fourth Amendment. (Petition, Doc. 1, ¶¶ 43–49.) Petitioner does not cite, and the Court is unaware of, any binding authority providing that immediate release is a cognizable remedy when an alien's detention violates the Fourth Amendment. The Court observes that while evidence obtained in violation of the Fourth Amendment is generally subject to suppression under the exclusionary rule, this does not dictate an alien's release from detention pursuant to a habeas action. *Alonso-Portillo v. Bondi*, No.

7

1:25-CV-306, 2025 WL 2483393, at *10–11 (S.D. Ohio Aug. 28, 2025). Indeed, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Accordingly, Petitioner fails to establish that his detention is unlawful because of any Fourth Amendment violations by Respondents.

## II.    Merits of Counts 3–9 (Remaining Claims)

In addressing the remaining counts of the Petition, which relate to the constitutionality of the revocation of Petitioner's ROR and his continued detention without a bond determination or opportunity for notice and comment, the Court turns to the preliminary question of exhaustion. The doctrine of exhaustion of administrative remedies instructs that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quotation omitted). Exhaustion serves several commendable goals: promoting judicial efficiency, allowing agencies to weigh in on the question as designed through the statutory or regulatory regime, providing an opportunity for self-correction, and producing a useful record. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Wheeler v. Williams*, No. 20-4037, 2021 WL 6071501, at *2 (6th Cir. Dec. 20, 2021). Specifically, exhaustion often takes one of three forms: statutory exhaustion, regulation-based exhaustion, or—as in "most contexts"—prudential exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994). While statutory exhaustion may be understood as a

mandate because the need to exhaust is explicitly spelled out by statute, "sound judicial discretion" otherwise governs when courts decide whether to apply prudential exhaustion. *Shearson*, 725 F.3d at 593 (quotation omitted); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "[C]ongressional intent and any applicable statutory scheme" inform judicial discretion on this point. *Shearson*, 725 F.3d at 593–94 (quotation omitted).

No relevant statute commands administrative exhaustion within this context, so the Court's inquiry focuses upon prudential exhaustion. *See Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 25-CV-13128, 2025 WL 3089756, at *3 (E.D. Mich. Nov. 5, 2025). As sister district courts have widely recognized while recently wrestling with cases like this one, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). And, while the Sixth Circuit "has not formally adopted a standard for determining when prudential exhaustion applies" in such situations, the Ninth Circuit has promulgated a relevant test. *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Under this test, exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If prudential exhaustion is appropriate under this test and a petitioner does not exhaust

9

all administrative remedies, a district court should generally either dismiss the petition without prejudice or stay the proceedings until the petitioner exhausts all remedies. *Espinosa*, 2025 WL 2878173, at *2 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

The Sixth Circuit has cited to the Ninth Circuit's approach in the context of challenging bond determinations by immigration courts, albeit in a brief, unpublished order. *See Rabi v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160). Additionally, several other district courts throughout the Sixth Circuit have addressed this issue by applying the Ninth Circuit's test. *See, e.g., Mendoza v. Raycraft*, No. 4:25-CV-2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-CV-1621, 2025 WL 2444114, at *8–9 (N.D. Ohio Aug. 25, 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Espinoza*, 2025 WL 2878173, at *2; *Lopez-Campos*, 2025 WL 2496379, at *4; *Orellana v. Noem*, No. 4:25-CV-112, 2025 WL 3006763, at *2 (W.D. Ky. Oct. 27, 2025).

Finding this framework persuasive under the circumstances, the Court will apply the Ninth Circuit's test for prudential exhaustion. As the Court adjudicates these cases and controversies, it is mindful of the separation of powers doctrine at play. *See City of New York v. Slater*, 145 F.3d 568, 570 (2d Cir. 1998) (per curiam) ("In general, a party is required to exhaust its administrative remedies before seeking judicial review of an agency decision, 'in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial

10

resources.'" (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996))). For the reasons set forth below, and in *Bartolon v. Bondi*, ___ F. Supp. 3d ___, 2025 WL 3674604, at *7-9 (S.D. Ohio Dec. 18, 2025), the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies.

Beginning with the first *Puga* factor, the Court finds that the BIA's expertise makes agency consideration beneficial to generate a proper record and reach a proper decision. While an agency's interpretation of a statute "cannot bind a court," agency expertise "has always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quotation omitted) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 98 n.8 (1983); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). As discussed above, Petitioner has not requested a bond hearing before an Immigration Judge, and he thus has not engaged in any appeal before the BIA. "[A]ny determination regarding detention here turns on interpretation and application of the governing removal regime." *Villalta*, 794 F. Supp. 3d at 531. A "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003). Thus, a petitioner must first request the relief he seeks from the Immigration Judge, and then "such review should proceed before the BIA to apply its experience and expertise without judicial interference." *Villalta*, 794 F. Supp. 3d at 531. Petitioner here has not done so.

11

The second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza*, 2025 WL 3157796, at *10. Petitioner's apparent attempt to sidestep both the Immigration Judge and the BIA in favor of habeas review highlights the need for an exhaustion requirement here to protect agency authority, limit interference with agency affairs, and promote judicial efficiency. *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003).

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring exhaustion, as administrative review of Petitioner's detention would allow the agency to correct its own alleged mistakes and alleviate the need for judicial review. While Petitioner attempts to predict the outcome of any review of his detention by the Immigration Judge and the BIA, he does not contest that the Immigration Judge and the BIA could provide the same relief he currently seeks before this Court. (*See* Reply, Doc. 11, Pg. ID 161–63.) "Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the . . . authority [of the Immigration Judge and the BIA] by allowing [them] the opportunity to correct [their] own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review." *Mendoza*, 2025 WL 3157796, at *10.

Although the *Puga* factors weigh in favor of requiring exhaustion, a court may nevertheless waive the prudential exhaustion requirement if "administrative remedies

are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). But, it is "speculative to make any assumptions regarding when the [Immigration Judge and the] BIA will resolve" a potential bond appeal by Petitioner, as "[t]here is insufficient information before the Court at this time to demonstrate that exhaustion of Petitioner['s] administrative remedies will be unduly prolonged." *Mendoza*, 2025 WL 3157796, at *13. Further, even if the BIA appeals process were to create additional delay, the Court has insufficient evidence before it to conclude that "the risk of irreparable harm to Petitioner[] outweighs the importance of requiring exhaustion under the circumstances presented." *Id.*

Petitioner argues that exhaustion would be futile given the BIA's decision in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). (Reply, Doc. 11, Pg. ID 161–63.) Such futility must be "clear and positive," as a petitioner "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) (quotation omitted). The Court would note that a flurry of litigation has ensued since *Matter of Hurtado*, including a class action ruling in *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), as well as the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). And, "even where there is a high probability of denial of a petitioner's appeal of an Immigration Judge's bond decision, such a probability does not weigh in favor of waiving exhaustion." *Espinoza*, 2025 WL 2878173, at *3 (quotation omitted); *see also Beharry*, 329 F.3d at 62 (explaining that merely because

13

an "argument would likely have failed is not tantamount to stating that it would have been futile to raise it").

Moreover, Petitioner expresses concern as to the delay that would result from requiring administrative exhaustion. (Reply, Doc. 11, Pg. ID 162–63.) Courts have discretion to waive the exhaustion requirement and rule on a matter when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). While some district courts in this circuit have chosen to waive exhaustion due to the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion. *See Alvarez-Lopez v. U.S. Dep't of Homeland Security*, No. 25-CV-13098, 2025 WL 3525956, at *2 (E.D. Mich. Dec. 9, 2025) (surveying intra-circuit split on the issue). And, the Court notes that, in many of those cases, the district courts supported their decision to waive exhaustion with both a finding of futility and undue hardship, not just the latter. By comparison, the Court finds here that Petitioner has not made a showing of futility. Absent binding precedent to the contrary, this Court therefore declines to find that the risk of delay alone warrants a waiver of exhaustion. And, the Court declines to reach the constitutional issues brought in Counts Three through Nine, as "Petitioner may very well obtain the relief [he] seeks via exhaustion of [his] administrative remedies." *Hernandez Torrealba*, 2025 WL 2444114, at *12.

## CONCLUSION

For the foregoing reasons, the Court declines to review Petitioner's detention-based claims for deprivation of a bond determination and opportunity for notice and

14

comment due to his failure to exhaust administrative remedies. The Court further finds that Petitioner's Fourth Amendment claims lack merit. Accordingly, the Court **ORDERS** the following:

1) Counts 1 and 2 of the Petition for Writ of Habeas Corpus (Doc. 1) are **DISMISSED WITH PREJUDICE**;

2) Counts 3, 4, 5, 6, 7, 8, and 9 of the Petition for Writ of Habeas Corpus (Doc. 1) are **DISMISSED WITHOUT PREJUDICE**;

3) Respondent Richard Jones's Motion to Dismiss for Failure to State a Claim (Doc. 5) is **DENIED AS MOOT**;

4) Petitioner's Motion for Temporary Restraining Order (Doc. 2) is **DENIED AS MOOT**; and

5) This matter is **TERMINATED** from the Court's docket.

   **IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

15